IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| DUSTIN ALAN ROWLAND, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:20-CV-00847-ALM- |
| | § | CAN |
| v. | § | |
| | § | |
| SOUTHWESTERN CORRECTIONAL, | § | |
| LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants Southwestern Correctional, LLC, d/b/a LaSalle Corrections, LLC, d/b/a LaSalle Southwest Corrections; LaSalle Management Company, LLC; Warden Stacey King; Sheriff Mark Johnson; and Fannin County, Texas's Motion to Dismiss First Amended Complaint ("Defendants' Motion to Dismiss") [Dkt. 40]. The Court, having considered Defendants' Motion to Dismiss [Dkt. 40], all responsive pleadings [Dkts. 47; 59], and all other relevant filings, finds that Defendants' Motion to Dismiss should be **GRANTED IN PART** and **DENIED IN PART**, as set forth herein.

**PROCEDURAL HISTORY**

On June 15, 2020, Plaintiff initiated the instant lawsuit in the Northern District of Texas challenging his alleged lack of medical treatment while a federal pretrial detainee at the Fannin County Detention Center ("FCDC") [Dkt. 1]. The crux of Plaintiff's case is his contention that he should have received outside corrective hernia surgery upon his request.

A filing fee was paid in the case and summons were issued shortly after filing [Dkts. 3; 6; 7]. On October 27, 2020, the instant cause was transferred to the Eastern District of Texas,

Sherman Division on venue grounds [Dkt. 24]. On transfer, each of Plaintiff's pending motions were considered moot; Plaintiff therefore refiled, on November 13, 2020, his request for leave to file an amended complaint [Dkt. 27]. Plaintiff's First Amended Complaint – Jury Demanded (hereinafter the "Amended Complaint") [Dkt. 28], was deemed properly filed before the Court [Dkt. 32] and is the live pleading in this case. The Amended Complaint names two additional defendants Juan Baltazar, Jr. and John M. Garrison [Dkt. 28].[1] On January 27, 2021, Defendants filed their Motion to Dismiss [Dkt. 40]. Plaintiff responded to the Motion to Dismiss on February 27, 2021 [Dkt. 47].[2] On March 10, 2021, Plaintiff moved to voluntarily dismiss Defendant Mark Johnson from this suit, which Defendant Johnson does not oppose [Dkts. 51; 59]. On April 4, 2021, Defendants filed their reply to the Motion to Dismiss [Dkt. 59].

***Factual Background & Live Pleading***

Plaintiff's live pleading asserts causes of action for violation of the Eighth Amendment and "Fourteenth Amendment Conditions of Confinement and Right to Reasonable Medical Care" under 42 U.S.C. § 1983 [Dkt. 28 at 17-18];[3] negligence [Dkt. 28 at 19]; and gross negligence [Dkt. 28 at 20]. Plaintiff brings such claims against seven named Defendants: Southwestern Correctional, LLC, d/b/a LaSalle Southwest Corrections ("SWC"); LaSalle Management Company, LLC d/b/a LaSalle Corrections ("LaSalle Management") (together with SWC, the "Corporate Defendants");[4] Warden Stacey King ("Warden King"); Sheriff Mark Johnson ("Sheriff

---

[1] Each of these defendants has also moved for dismissal of Plaintiff's claims [Dkt. 55]. The Court considers such request by separate report and recommendation.

[2] In conjunction with his response to Defendants' Motion to Dismiss [Dkt. 47], Plaintiff also filed a Motion to Strike Defendants' Motion to Dismiss [Dkt. 48]. The Court previously denied Plaintiff's Motion to Strike [Dkt. 66].

[3] In connection with his Fourteenth Amendment claim regarding his "conditions of confinement and right to reasonable medical care," Plaintiff also references the Fifth Amendment [Dkt. 28 at 17]. The Court finds Plaintiff, by use of this reference, has put the Court on notice of his intent to assert a claim for the protections due pretrial detainees for medical care, whether under the Fourteenth or Fifth Amendments.

[4] The Corporate Defendants argue Plaintiff has misnamed them and omitted the actual party in interest in this suit [Dkt. 40 at 7-8]. In the Motion to Dismiss, SWC names itself as "Southwestern Correctional, LLC, d/b/a LaSalle

Johnson");[5] Fannin County, Texas ("Fannin County"); John M. Garrison ("Marshall Garrison"); Juan Baltazar, Jr. ("Baltazar"). He also asserts claims against John Does 1-5; and Jane Does 1-5 [Dkt. 28 at 5-8].[6] As relief, Plaintiff seeks compensatory and punitive/exemplary damages, as well as attorneys' fees and costs [Dkt. 28 at 22]. No injunctive relief is sought.

Plaintiff pleads that in April 2018, the previous operator of the FCDC announced that it was terminating its contract with Fannin County [Dkt. 28 at 9]. Thereafter, on July 24, 2018, Fannin County entered into Facility Operation and Management Agreements for the operation and

---

Corrections, LLC [] d/b/a LaSalle Southwest Corrections" and LaSalle Management names itself "LaSalle Management Company, LLC" [Dkt. 40 at 1]. The Corporate Defendants contend that the jail operator is "LaSalle Corrections West, LLC" [Dkt. 40 at 7]. The Court will address such argument *infra*.

[5] Subsequent to the filing of the Motion to Dismiss, Plaintiff filed a Notice of Voluntary Dismissal of Defendant Mark Johnson [Dkt. 51], dismissing all claims against Sheriff Johnson without prejudice. As noted in Defendants' Reply [Dkt. 59], Sheriff Johnson does not oppose this request. Because Plaintiff voluntarily dismissed Sheriff Johnson [Dkt. 51], the Court need not explicate all arguments as to why Plaintiff's claims against such Defendant would be properly dismissed. However, the Court does note that Defendants argue that Plaintiff's claims against Sheriff Johnson (assuming Plaintiff can assert a § 1983 claim against him) fail as he is entitled to the defense of qualified immunity [Dkt. 40 at 30-32]. Plaintiff has failed to respond to Sheriff Johnson's assertion of qualified immunity. To determine whether a plaintiff satisfies the second prong of the qualified immunity analysis, the Court must determine "whether the law so clearly and unambiguously prohibited defendant's conduct that 'every reasonable official would understand that what he is doing violates the law.'" *Brown v. Coulston*, 463 F. Supp. 3d 762, 773 (E.D. Tex. 2020), *appeal dismissed*, No. 20-40432, 2020 WL 10224613 (5th Cir. Sept. 25, 2020) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc)) (emphasis in original) (alterations omitted). More specifically, there must be "controlling authority—or a 'robust consensus of persuasive authority'—that defines the contours of the right in question with a high degree of particularity." *Id.* (quoting *Morgan*, 659 F.3d at 371-72). "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Id*. (quoting *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018)). Here, because Plaintiff failed to carry his burden to present authority establishing the allegedly violated right, the Court finds that absent Plaintiff's dismissal of Sheriff Johnson, he would be entitled to qualified immunity.

[6] Plaintiff states that "Defendants Johns Does 1-5 and Jane Does 1-5 are placeholder defendants representing presently unidentified individuals, shareholders, and/or agents of Defendants who participated in the illegal activities and conduct alleged" in the First Amended Complaint [Dkt. 28 at 8]. Defendants argue that arguments discussed herein inure to the benefits of John Does 1-5 and Jane Does 1-5 [Dkt. 40 at 35]. The Court agrees. The Fifth Circuit has held that when a defending party establishes that the plaintiff has no cause of action, this defense also inures to the benefit of non-answering defendants. *Wright v. Cerliano*, No. 6:19-CV-386, 2020 WL 2758789, at *2 (E.D. Tex. Apr. 20, 2020) (citing *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001); *Young v. Isola*, 708 F. App'x 152 (5th Cir. 2017)), *report and recommendation adopted*, No. 6:19-CV-00386, 2020 WL 2754756 (E.D. Tex. May 27, 2020). "The policy rationale for this [result] is that it would be incongruous and unfair to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants." *Spoon v. City of Galveston, Tex.*, No. 3:17-CV-00120, 2018 WL 6246693, at *4 (S.D. Tex. Nov. 29, 2018). Plaintiff's claims against John Does 1-5 and Jane Does 1-5 should be dismissed for the same reasons as those stated as to the named defendants. *Nance v. Meeks*, No. 3:17-CV-1882-L-BN, 2018 WL 5624202, at *7 (N.D. Tex. Aug. 1, 2018) ("These reasons also explain why Sheriff Meeks (and any other similarly-situated defendant) is also entitled to qualified immunity as to Ms. Nance's retaliation claim against – based on her theory that she was denied good-time credits for writing too many grievances."), *report and recommendation adopted*, No. 3:17-CV-1882-L, 2018 WL 5620469 (N.D. Tex. Oct. 30, 2018).

REPORT AND RECOMMENDATION – Page 3

management of the FCDC with LaSalle Corrections West, LLC to be effective as of September 1, 2018 [Dkt. 28 at 9]. Plaintiff contends that through this contract, Fannin County has sought to delegate its authority to comply with Texas Local Government Code §§ 351.001, 351.041, and its obligations under the United States Constitution and laws, to the Corporate Defendants [Dkt. 28 at 9].[7]

After execution of the Facility Operation and Management Agreements, Plaintiff was arrested on federal criminal charges for "Interference with Commerce by Robbery; Aiding and Abetting in violation of 18 U.S.C. §§ 1915(a), 1915(2)" and "Using, Carrying, and Brandishing a Firearm During and in Relation to a Crime of Violence; Aiding and Abetting in violation of 18 U.S.C. § 924(c)(1)(A)(ii)" in the Northern District of Texas. *United States v. Smith*, Cause No. 3:18-CR-324-M-3 (N.D. Tex. June 27, 2018), ECF No. 1. Plaintiff entered into a plea agreement on June 26, 2019 and pleaded guilty to the charges pending in the Northern District on August 6, 2019. *Id.* ECF Nos. 44, 58. Per Plaintiff, after pleading guilty, and while awaiting sentencing, Plaintiff was housed at FCDC [Dkt. 28 at 2]. There is no dispute that at the time Plaintiff was housed in FCDC he was a federal pre-trial detainee in the custody of the United States Marshall Service ("USMS").

Prior to his arrival at FCDC, and while in custody, Plaintiff was injured in a fight, resulting in an umbilical hernia [Dkt. 28 at 2, 9]. Plaintiff claims to have submitted multiple requests for medical treatment of his hernia while at FCDC, both verbal and in writing. Plaintiff avers that as a result of the non-treatment "his hernia has enlarged, its condition has worsened" and Plaintiff is now experiencing additional conditions and complications which threaten his life [Dkt. 28 at 11]. Notably, Plaintiff was sentenced on June 17, 2020 [Dkt. 28 at 3]. Following sentencing, per

---

[7] Plaintiff seemingly alleges therefore that while Fannin County owns the facility; the day-to-day operations have been contracted to the Corporate Defendants [Dkt. 28 at 9].

Plaintiff, he was housed in the Dallas County Jail for three months, then Oklahoma for two months, and then transferred to a facility in Colorado in September 2020 [Dkt. 28 at 3], and thus was no longer housed at FCDC. To date, Plaintiff pleads he still has not received the requested surgery.

During his tenure at FCDC, Plaintiff claims medical care was refused to him, namely the surgery to fix his hernia; and, that such refusal is a standard operating procedure at FCDC, amounting to a well-established policy, custom, and practice for those facilities operated by the Corporate Defendants, and adopted by or acquiesced in by Fannin County [Dkt. 28 at 2]. Plaintiff alleges Warden King, employed by the Corporate Defendants, is in charge of the overall oversight and management of FCDC [Dkt. 28 at 12]. Plaintiff avers that the Corporate Defendants were "fully aware, and had actual knowledge, of [Plaintiff's] condition, and his urgent need for surgery, yet [] failed and refused to provide such badly needed treatment" [Dkt. 28 at 12]. More fully, Plaintiff pleads:

> [S]uch [willful] denial of medical care is the result of the established custom, policy, pattern, and practice of LaSalle Corrections, adopted and acquiesced in by the Fannin County defendants, demonstrating their direct, intense, and systemic disregard for the lives and comfort of the inmates who have been entrusted to them, believing that they are justified in denying medical care because these individuals are merely detainees and prisoners, whom Defendants believe do not deserve to be treated like human beings.

[Dkt. 28 at 12]. In support of these allegations, Plaintiff provides the names of other inmates whom he asserts have died at facilities operated by the Corporate Defendants due to inadequate medical care [Dkt. 28 at 4]. None of the listed instances occurred at or involve FCDC.

Plaintiff avers that Defendants, relying on the Intergovernmental Agreement ("IGA") between Fannin County and the USMS, now seek to "escape culpability for their deliberate indifference toward [Plaintiff's] medical needs, by seeking to blame the [USMS] for failing to approve the treatment needed by [Plaintiff]" [Dkt. 28 at 12]. The IGA states in relevant part:

The Local Government shall provide federal detainees with the full range of medical care **inside** the detention facility. The level of care inside the facility should be the same as that provided to state and local detainees. The Local Government is financially responsible for all medical care provided **inside** the facility to federal detainees. This includes the cost of all medical, dental, and mental health care as well as the cost of medical supplies, over the counter prescriptions and, any prescription medications routinely stocked by the facility which are provided to federal detainees. The cost of all of the above-referenced medical care is covered by the federal per diem rate. However, if dialysis is provided within the facility, the Federal Government will pay for the cost of that service.

The Federal Government is financially responsible for all medical care provided **outside** the facility to federal detainees.

*** 

All **outside** medical care provided to federal detainees must be pre-approved by the Federal Government. In the event of an emergency, the Local Government shall proceed immediately with necessary medical treatment. In such an event, the Local Government shall notify the Federal Government immediately regarding the nature of the federal detainee's illness or injury as well as the types of treatment provided.

[Dkts. 28 at 13; 40-1 at 5 (emphasis in original)]. Plaintiff asserts the refusal of the USMS "to approve payment for a procedure does not render the procedure unnecessary, nor does it discharge the [Defendants'] Constitutional duty to provide needed medical" treatment [Dkt. 28 at 13]. "Plaintiff alleges that, at the outset of the diagnosis of his hernia, its treatment should have been considered as a routine procedure" [Dkt. 28 at 13]. Later, however, when Plaintiff's condition worsened, "it became an emergency requiring immediate treatment without the need for prior approval by the [USMS]" [Dkt. 28 at 13].

In further support of such position, Plaintiff pleads that on November 12, 2019, Plaintiff was examined by a doctor who recommended surgery to correct the umbilical hernia but stated that although Defendant would "benefit having [the umbilical hernia] repaired [] there is no urgency for it since it is freely reducible" [Dkt. 28-17]. Following this consultation, Plaintiff was advised surgery would be scheduled, and his defense counsel filed an unopposed motion for continuance of Plaintiff's sentencing to allow for the anticipated surgery [Dkts. 28 at 9; 28-18].

When no surgery was scheduled, Plaintiff contacted and retained separate legal counsel (counsel in the instant civil action), who sent a demand letter dated March 24, 2020 to LaSalle Corrections Headquarters, LaSalle Southwest Corrections Headquarters, a Warden Joseph Wilson, and Sheriff Mark Johnson, demanding that the recipients "immediately take all necessary action to obtain the necessary and proper medical treatment for [Plaintiff]" [Dkt. 28-19]. Following a lack of response from the named recipients, Plaintiff's counsel sent a second demand letter again requesting that the necessary actions be taken to provide Plaintiff medical care [Dkt. 28-20].

### *Motion to Dismiss*

Defendants urge numerous bases for dismissal of each of Plaintiff's claims against them under Rule 12(b)(6) [Dkt. 48]. As threshold issues, Defendants argue that Plaintiff's claims should be dismissed because: (1) the alleged jail operator is not a party; (2) no plausible facts show the United States Marshall Service approved the surgery Plaintiff seeks; and (3) incorporation by reference and global allegations lack substantive plausibility [Dkt. 40 at 7-15].[8] Defendants further assert that Plaintiff's claims under § 1983 against the Corporate Defendants and Warden King

---

[8] As to Defendants' argument regarding incorporation by reference, Defendants aver that Plaintiff has impermissibly filed a "shotgun pleading," arguing that Plaintiff's claims stating "Plaintiff incorporates by this reference the allegations. . . above, as if the same were fully set forth herein" lack substantive plausibility [Dkt. 40 at 13]. Plaintiff argues that the Amended Complaint "alleges in great detail the manner in which he was treated, and his medical needs ignored, and how this treatment amounted to a violation of his Constitutional rights" [Dkt. 47 at 20]. As opposed to the "short and [plain] statement" requirement outlined in Rule 8, shotgun pleadings contain several counts within a complaint with each count "incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Roe v. Johnson Cnty., Tex.*, No. 3:18-CV-2497-B-BN, 2019 WL 5031357, at *5 (N.D. Tex. July 29, 2019) (citing *Copeland v. Axion Mortg. Group LLC*, No. 1:16cv159-HSO-JCG, 2016 WL 4250431, at *4 (S.D. Miss. Aug. 11, 2016)), *report and recommendation adopted*, No. 3:18-CV-2497-B-BN, 2019 WL 3980737 (N.D. Tex. Aug. 22, 2019). As support for their contention that Plaintiff's Amended Complaint constitutes a "shotgun pleading" Defendants rely upon *Roe v. Johnson* [Dkt. 40 at 13]. 2019 WL 5031357. In *Roe*, the court was addressing an amended complaint asserting seventy separate claims with "[t]he first paragraph under each claim begin[ing] with some variation of 'Plaintiff repeats, realleges, and incorporates herein each of the preceding and following paragraph as if fully set forth herein.'" *Id.* Here, Plaintiff asserts three separate claims, and while he includes the language "Plaintiff incorporates by this reference the allegations. . . above, as if they were fully set forth herein[,]" Plaintiff then continues on to include factual allegations related to such claim [Dkt. 28 at 17-21]. The Court declines to find that Plaintiff's Amended Complaint falls below the standard of Rule 8 due to incorporating allegations by reference. The Court separately addresses however, *supra*, Defendants' assertions that Plaintiff's global allegations or references to Defendants collectively blur which claims are asserted against which defendants preventing the Court from evaluating such claims.

must be dismissed as he has: (1) stated no personal participation by Warden King, and (2) *Bivens* claims against the Corporate Defendants, Warden King, and any employees at the FCDC, regardless of whether Plaintiff has sued the correct corporate entity, are barred [Dkt. 40 at 15-24, 25-26, 28-32]. Defendants urge, as to this final point, that Plaintiff's claims against the Corporate Defendants are barred by *Malesko* and Plaintiff's claims against Warden King are barred by *Minneci* [Dkt. 40 at 17-18, 32-33]. Furthermore, Defendants contend Plaintiff has failed to properly plead any claims for violation of the Eighth Amendment, failure to train, negligence, and gross negligence [Dkt. 40 at 24-25, 33-35]. Defendants also aver that Plaintiff has failed to properly plead a claim for municipal liability against Fannin County, [Dkt. 40 at 19-24].

## LEGAL STANDARD

### *Federal Rule of Civil Procedure 12(b)(6)*

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. FED. R. CIV. P. 12(b)(6). The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows, that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—

'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)) (alteration in original).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 681. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Court must accept as true all well-pleaded facts contained in Plaintiff's Complaint and view them in the light most favorable to Plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992)).

### Consideration of Exhibits Attached to Motion to Dismiss

Because a court must accept as true all well-pleaded facts in the complaint, in determining whether to grant a motion to dismiss, a district court may generally not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, a district court may consider documents attached to the complaint and may also consider documents attached to a motion to dismiss and the response thereto, if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Scanlan*, 343 F.3d at 536; *Bradley v. PNC Bank, N.A.*, No.

4:14-CV37, 2014 WL 4829317, at *3 n.3 (E.D. Tex. Sept. 26, 2014) (considering note and assignment attached to Motion to Dismiss).[9]

While "the Fifth Circuit has not articulated a test for determining when a document is central to a plaintiff's claims, the case law suggests that documents are central when they are necessary to establish an element of one of the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011). Plaintiff objects to Defendants' improper submission of documents not attached to Plaintiff's Amended Complaint, namely the medical records and internal USMS Prisoner Medical Requests [Dkt. 47 at 9-12]. Courts faced with the same or similar circumstances, whether to consider medical records attached to a motion to dismiss, have held that the records attached to the complaint or referred to therein may be considered. *See Christensen v. Mejia*, No. 3:15-CV-0854-L-BK, 2016 WL 11258227, at *3 (N.D. Tex. Oct. 26, 2016) (Plaintiff's "medical treatment, or lack thereof, is central to [his] deliberate indifference claims. Therefore, the medical records attached to Defendants' motion and to which [Plaintiff] has referred in his complaint have been considered by the Court."), *report and recommendation adopted*, No. 3:15-CV-854-L, 2017 WL 2838120 (N.D. Tex. July 3, 2017). Adopting this same rationale, at this juncture, the Court will limit its consideration to those medical records attached to the First Amended Complaint [Dkt. 28] or expressly referenced therein. The Court will not consider the remainder of the medical records or internal USMS Prisoner Medical Requests attached to Defendants' Motion to Dismiss [Dkt. 40-2]. The Court does find that it can

---

[9] Federal Rule of Evidence 201 also permits judicial notice of an "adjudicative fact" where the fact is "not subject to reasonable dispute because it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (quoting FED. R. EVID. 201(b)). A court may take judicial notice of publicly available documents, including filings, orders, and judgments from other lawsuits. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011); *Crear v. JPMorgan Chase Bank, N.A.*, No. 3:19-CV-2255-M-BT, 2020 WL 5848991, at *3 (N.D. Tex. Sept. 30, 2020).

consider the U.S. Department of Justice United States Marshall Service Modification of Intergovernmental Agreement [Dkt. 40-1].[10]

## ANALYSIS

### *Plaintiff's Eighth Amendment Claims*

Defendants argue that Plaintiff has failed to state a claim for any alleged violation of the Eighth Amendment as he was a pretrial detainee during his tenure at FCDC and such protections "do not attach until after conviction and sentencing" [Dkt. 40 at 15]. The Court agrees that "pre-trial detainees may not bring a cause of action based on the Eighth Amendment. It protects only those who have been convicted." *Baker*, 75 F.3d at 198; *see also Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). Plaintiff counters that while he was a federal detainee at the time his injury arose, his sentencing in June 2020 made him a federal prisoner "and his treatment is now subject to the protections of the Eighth Amendment to the United States Constitution" [Dkt. 47 at 8]. However, at all times relevant to Plaintiff's claims, Plaintiff was a pre-trial detainee who had not yet been convicted. Plaintiff himself pleads that he was sentenced on June 17, 2020 [Dkt. 28 at 3]. And that following sentencing he did not return to the FCDC; per Plaintiff, he was housed in the Dallas County Jail for three months, then Oklahoma for two months, and then transferred to a facility in Colorado in September 2020 [Dkt. 28 at 3]. *See McCarty v. Dougherty*, No. 9:17-CV-182, 2021 WL 956225, at *3 (E.D. Tex. Feb. 2, 2021) ("The Fourteenth Amendment ensures the

---

[10] As such, the Court does not address Defendants' argument that Plaintiff's claims are meritless as "all outside medical care must be approved by the" USMS, and such approval by the USMS for the hernia surgery was not obtained [Dkt. 40 at 8-13]. Looking to Plaintiff's live pleading, Plaintiff concedes that at the outset his diagnosis of a hernia, and the corresponding treatment "should have been considered as a routine procedure" [Dkt. 28 at 13]. However, Plaintiff further pleads that due to the continued denial of treatment, Plaintiff's condition worsened and "became an emergency requiring immediate treatment without the need for prior approval by the [USMS]" [Dkt. 28 at 13]. Moreover, the IGA, relied upon by both Parties, states "[i]n the event of an emergency, the Local Government shall proceed immediately with necessary medical treatment" [Dkts. 28 at 13; 40-1 at 5]. Because Plaintiff has alleged that his hernia became an emergency condition which is to be treated without prior USMS, the Court finds Plaintiff has stated "enough facts to state a claim to relief that is plausible on its face" so as to survive at the motion to dismiss stage. *Twombly*, 550 U.S. at 570.

safety of pretrial detainees, while the Eighth Amendment applies to convicted prisoners.") (citing *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019)), *report and recommendation adopted*, No. 9:17-CV-182, 2021 WL 949465 (E.D. Tex. Mar. 12, 2021).  Thus, any claims Plaintiff purports to bring under the Eighth Amendment must fail.

***Plaintiff's Fourteenth Amendment Claims – Corporate Defendants and Warden King***

### Any Claims for Alleged Failure to Train

To the extent Plaintiff asserts a failure to train under the Fourteenth Amendment, such claim also fails.  Defendants aver that Plaintiff's conclusory allegation of failure to train "sprinkle[d]. . . throughout his complaint" fail to state a claim [Dkt. 40 at 24].  And further that Plaintiff's allegations for failure to train "do not satisfy th[e] exacting standard" of deliberate indifference [Dkt. 40 at 25].  Plaintiff does not respond to Defendants' argument that any purported claim for failure to train should be dismissed.

"To succeed on a failure to train claim, a plaintiff must show that '(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008) (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)).  "[A] single incident is usually insufficient to demonstrate deliberate indifference." *Estate of Davis*, 406 F.3d at 382 (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  "Rather, deliberate indifference generally requires that a plaintiff demonstrate at least a pattern of similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation." *Burge v. St. Tammany Parish*, 336 F.3d 363 (5th Cir. 2003) (internal citations omitted).  When premised upon a failure to train, the

defendants must have actual or constructive notice that a particular omission in the training causes constitutional violations and, knowing about the omission and the constitutional violations, the defendants deliberately chose to retain the program. *Porte v. Epps*, 659 F.3d 440, 447 (5th Cir. 2011).

Here, Plaintiff vaguely alleges that the Corporate Defendants have failed "to provide properly trained employees to manage inmates, and ultimately is part of the overall problem inherent in [the Corporate Defendants'] minimalist effort to provide proper treatment for inmates" [Dkt. 28 at 16]. And further, that the failure to train has caused Plaintiff to suffer intense, ongoing, and severe pain [Dkt. 28 at 5]. Plaintiff makes such allegations based, in large part, upon a study by the television station WFAA reporting twenty-five percent of jailers employed by the Corporate Defendants at the FCDC are working on temporary licenses [Dkt. 28 at 16]. Plaintiff's "sprinkling" is insufficient to plead a claim for failure to train, thus dismissal is appropriate on this claim. *See Walter v. Dir., TDCJ-CID*, No. 5:19CV127, 2020 WL 8696243, at *9 (E.D. Tex. Aug. 14, 2020) ("Plaintiff's conclusory allegations of failure to train or supervise do not plead a plausible cause of action and cannot survive a motion to dismiss."), *report and recommendation adopted sub nom. Walter v. Dir. TDCJ - CID*, No. 5:19-CV-00127-RWS, 2021 WL 807527 (E.D. Tex. Mar. 3, 2021); *Melton v. Hunt Cnty.*, No. 3:14-CV-2202-N, 2019 WL 5067907, at *3 (N.D. Tex. Oct. 8, 2019) ("Melton's pleading consists of only conclusory allegations. Melton does not establish that Hunt County's failure to train was the 'moving force' behind the constitutional violation nor does Melton allege any facts that show that Hunt County or Sheriff Meeks acted with deliberate indifference.").[11]

---

[11] To the extent Plaintiff intended to assert any failure to train claim against Fannin County the claim would similarly fail for the reasons provided herein.

REPORT AND RECOMMENDATION – Page 13

**Claims Against the Corporate Defendants**

Defendants raise a threshold argument to liability against the Corporate Defendants, namely that Plaintiff has failed to state a claim because the alleged jail operator is not a named party [Dkt. 28 at 7-15]. Defendants contend that Plaintiff's claims against the entity operating the FCDC fail as Plaintiff did not sue "LaSalle Corrections West, LLC", but rather sued the Corporate Defendants, Southwestern Correctional, LLC, d/b/a LaSalle Corrections, LLC, d/b/a LaSalle Southwest Corrections and LaSalle Management Company, LLC [Dkt. 40 at 7]. Defendants aver that "no plausible facts show that SWC or LaSalle Management have any involvement with LaSalle Corrections West, LLC" [Dkt. 40 at 7]. Plaintiff responds that he "has plead in detail the manner in which the LaSalle Defendants hold themselves out to the public as one enterprise" [Dkt. 47 at 4]. Plaintiff rejoins "[a]t no point in this worldwide advertising and promotion of the business of LaSalle Corrections is there a disclaimer to the effect that LaSalle Corrections is actually a conglomeration of independent corporation, each acting on its own, and with no responsibility for each other" [Dkt. 47 at 5].

Courts in this district have rejected the same or similar arguments presented by the Corporate Defendants herein. *See Sabbie v. Southwestern Correctional, LLC*, No. 5:17-cv-00113-RWS-CMC (E.D. Tex. Mar. 6, 2019) ECF No. 122 at 149-53; *Mathis v. Southwestern Correctional, LLC*, No. 5:20-cv-00146-RWS-CMC (E.D. Tex. June 15, 2021) ECF No. 47 at 88-89. Furthermore, in considering a Rule 12(b)(6) motion to dismiss, the Court must take as true Plaintiff's pleadings. Plaintiff alleges the following in connection with the Corporate Defendants:

> Defendant Southwestern Correctional LLC d/b/a LaSalle Southwest Corrections ("LaSalle Corrections") is a Texas Limited Liability Company doing business in this District and elsewhere in the State of Texas for the purposes of profit. LaSalle Corrections, together with Defendant LaSalle Management LLC, operate the Fannin County Detention Facility.

***

REPORT AND RECOMMENDATION – Page 14

> Defendant LaSalle Management Company LLC, d/b/a LaSalle Corrections ("LaSalle Management") is a Louisiana Limited Liability Company doing business in this District for the purposes of profit, which is the parent corporation owning and directing LaSalle Corrections, conducting business under the registered trade name of "LaSalle Corrections."  Although LaSalle Management claims that it is separate and apart from LaSalle Corrections, on information and belief it is aware of the inhumane denials of Constitutional rights by LaSalle Corrections, because, in addition to its ordinary course of business, wherein due to the overlapping personnel and interrelationship between the two corporations, it has been joined as a defendant in various lawsuits alleging unconstitutional denials of medical care causing death, and has done nothing to remedy such denials, and the profits generated by LaSalle Corrections directly or indirectly benefit LaSalle Management and its shareholders.
>
> ***
>
> Together, LaSalle Corrections and LaSalle Management are holding themselves out to the public under the name "LaSalle Corrections" as a corporate entity that offers correctional services in a number of states including Texas, as depicted on its website, found at http://www.lasallecorrections.com/.   LaSalle Management utilizes the trade name "LaSalle Corrections," and the primary corporate management office for the entire organization is maintained at the Louisiana address for LaSalle Management.

[Dkt. 28 at 5-7].   Upon consideration of Plaintiff's pleadings, and this district's previous consideration of the issue, the Court finds that dismissal on this basis is inappropriate at this stage. *See Sabbie*, No. 5:17-cv-00113-RWS-CMC, ECF No. 122; *Mathis*, No. 5:20-cv-00146-RWS-CMC, ECF No. 47.

### *Malesko* Bars Plaintiff's § 1983 Claims Against Corporate Defendants

However, Plaintiff's § 1983 claims against the Corporate Defendants are barred on other grounds.  Defendants next argue that "[d]espite invoking Section 1983, [Plaintiff's] claims [against the Corporate Defendants] fall under *Bivens* and its progeny" [Dkt. 40 at 17], and further that the Supreme Court's holding in *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001), dictates Plaintiff may not succeed on any *Bivens* action against the Corporate Defendants [Dkt. 40 at 17-18].  Plaintiff counters that "[c]ontrary to Defendants' tortured attempt to twist Plaintiff's claim into a claim for actions under color of Federal law, the claims of [Plaintiff] herein are based upon

Fannin County's delegation of its power and duty to operate jails to the [Corporate] Defendants" [Dkt. 47 at 14]. Plaintiff continues that because his claims are not based upon federal law, *Malesko* does not support dismissal of Plaintiff's claim [Dkt. 47 at 14].[12]

"Section 1983 liability results when a person acting under color of state law, deprives another of rights secured by the Constitution or federal law." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (quoting *Doe v. United States*, 831 F.3d 309, 314 (5th Cir. 2016)) (internal quotation marks omitted). Or stated differently, § 1983 provides a cause of action against state actors for violations of federal rights. *See Mauro v. Freeland*, 735 F. Supp. 2d 607, 614 (S.D. Tex. 2009). To the extent private prison-management corporations house inmates under color of state law, they are state actors subject to suit in a § 1983 action. *See Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003); *Jenkins v. LaSalle Sw. Corr.*, No. 3:17-CV-1376-M-BN, 2018 WL 3748196, at *7 (N.D. Tex. July 11, 2018) ("private corporation[s], may be sued under 42 U.S.C. § 1983 for alleged constitutional injury, because the operation of a prison is a fundamental government function.") (citing *Olivas v. Corrs. Corp. of Am.*, 408 F. Supp. 2d 251, 254 (N.D. Tex. 2006)), *report and recommendation adopted*, No. 3:17-CV-1376-M, 2018 WL 3743945 (N.D. Tex. Aug. 7, 2018).

However, § 1983 claims are not applicable to federal officials. *See Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017) (noting that "a *Bivens* actions is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather

---

[12] Plaintiff provides no authority holding that a private entity or its employee providing services to a federal prisoner via a contract with the county, which in turn contracts with the federal government, is acting under color of state law. *Freeman v. Corizon Health, Inc.*, No. 4:16-CV-00426-JAJ, 2018 WL 10580740, at *2 (S.D. Iowa Oct. 1, 2018), *aff'd*, 778 F. App'x 410 (8th Cir. 2019). The Court agrees, and the Northern District of Texas recently found that a § 1983 claim may be asserted against a private corporation, including specifically LaSalle Southwest Corrections, when such claim is asserted by a state pretrial detainee. *Jenkins v. LaSalle Sw. Corr.*, No. 3:17-CV-1376-M-BN, 2018 WL 3748196, at *7 (N.D. Tex. July 11, 2018) ("although LaSalle 'is a private corporation, [it] may be sued under 42 U.S.C. § 1983 for alleged constitutional injury'" by a state pretrial detainee), *report and recommendation adopted*, No. 3:17-CV-1376-M, 2018 WL 3743945 (N.D. Tex. Aug. 7, 2018).

than federal, officials"). The Supreme Court has held that private prisons acting under color of federal law cannot be held liable under § 1983. *Aguilar-Hernandez v. GEO Grp.*, No. PE:19-CV-00024-DC-DF, 2020 WL 5583532, at *3 (W.D. Tex. July 13, 2020) (citing *Malesko*, 534 U.S. at 61), *report and recommendation adopted*, No. PE:19-CV-00024-DC, 2020 WL 5583531 (W.D. Tex. Aug. 11, 2020), *appeal dismissed*, No. 20-50803, 2021 WL 981426 (5th Cir. Feb. 15, 2021). A plaintiff seeking recovery for money damages from a federal official for violation of federal constitutional rights has a right of action analogous to a § 1983 action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). *See Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110 n.14 (5th Cir. 1993) (*Bivens* "extends the protections afforded by § 1983 to parties injured by federal actors not liable under § 1983"); *Grainger v. Federal Bureau of Prisons*, No. C–08–387, 2009 WL 47127, at *2 (S.D. Tex. Jan. 6, 2009) ("[a] *Bivens* action is the counterpart to a § 1983 civil rights action and extends to parties injured by federal actors the protections afforded under § 1983 to parties injured by state actors.") (citing *Carlson v. Green*, 446 U.S. 14, 18 (1980)). However, there is no implied right of action, pursuant to *Bivens*, for damages against private entities, such as operators of private prison facilities, that engage in alleged constitutional deprivations under color of federal law. *See Malesko*, 534 U.S. at 66.

In considering Defendants' arguments that Plaintiff's claims under § 1983 must be dismissed, the Court first turns to *Ayala-Gutierrez v. Doe*, 697 F. App'x 285, 286 (5th Cir. 2017).[13] In *Ayala-Gutierrez*, the Fifth Circuit affirmed the district court's dismissal of a federal pretrial detainee's claims under § 1983 and as barred by *Bivens* against a privately operated detention facility. 697 F. App'x 285, 286 (5th Cir. 2017). The district court cited in support of its findings

---

[13] In addition, in an earlier, unreported case, the Fifth Circuit appeared to hold that *Bivens*, not § 1983, applies to lawsuits brought by a federal prisoner against a non-federal correctional facility under contract to temporarily house federal prisoners. *See Sandovall v. Wackenhut Corr. Corp.*, 21 F.3d 1109, 1994 WL 171703, at *2 n.3 (5th Cir. Apr. 28, 1994) (per curiam).

the Southern District of Texas' decision in *Vargas v. Joe Corley Detention Facility*, No. CIV.A. H-11-196, 2012 WL 6042201 (S.D. Tex. Dec. 4, 2012), which similarly found a federal pretrial detainee failed to state a § 1983 claim against a private corporation managing the county detention facility.  *Ayala-Gutierrez v. Jackson*, No. CV H-15-0387, 2016 WL 524225, at *1 n.2 (S.D. Tex. Feb. 9, 2016) (citing *Vargas v. Joe Corley Det. Facility*, No. CIV.A. H-11-196, 2012 WL 6042201 (S.D. Tex. Dec. 4, 2012)), *aff'd sub nom. Ayala-Gutierrez v. Doe*, 697 F. App'x 285 (5th Cir. 2017).  Instructive in *Vargas*, the court delineated the parties' underlying relationships, citing a press release reflecting the existence of a "contractual agreement between Montgomery County, Texas and the United States Marshals Service for the housing of federal detainees and the agreement between Montgomery County and the GEO Group with respect to the management of the facility."  *Vargas*, 2012 WL 6042201, at *1, n.1.  Though not in circuit, like *Vargas*, the Southern District of Iowa, in *Freeman v. Corizon Health, Inc.*, albeit at the summary judgment stage, outlined the material facts surrounding the parties' relationships:

> Plaintiff was a federal inmate held on federal charges at the Polk County Jail. Corizon is a Tennessee corporation that conducted business in the State of Iowa. . . Polk County had a contract with the United States Marshals Service (USMS) to temporarily house federal inmates under the care and custody of USMS at the Polk County Jail if requested to do so by USMS.  Polk County was obligated under its agreement with USMS to provide services to temporarily housed federal inmates, such as housing, food, and medical care.  Polk County, in turn, had a private contract with Corizon in which Corizon provided medical care and services to inmates at the Polk County Jail, including temporarily housed federal inmates.  Polk County Jail housed Plaintiff temporarily at the request of USMS pursuant to the contractual agreement between Polk County and USMS.  Plaintiff was not held on any charges from the State of Iowa.

*Freeman*, 2018 WL 10580740, at *2.  There as here, defendants argued they were acting under color of federal law and could not be held liable under 42 U.S.C. § 1983.  *Id*.  The *Freeman* plaintiff, as Plaintiff does here, rejoined that he was in a state-run facility, not a private facility, therefore the private corporation and its employees were state actors.  *Id*.  The *Freeman* Court in

rejecting the plaintiff's position found: "[h]ere, Plaintiff was a federal inmate, and that makes all the difference"; the court continued "without the county's involvement, the relationship between Plaintiff and the private Defendants is no different than that in *Malesko* and *Minneci*," ultimately concluding § 1983 did not provide the federal pretrial detainee a cause of action against the private contractor. *Id*. at *2, 4.

In addition to these authorities, the Western District of Texas considered an analogous case also involving a LaSalle operated prison facility. *Tavares v. LaSalle Corrs. Emerald Corr. Mgmt. W. Tex. Det. Ctr.*, No. EP17CV00289PRMRFC, 2018 WL 2452977, at *2-3 (W.D. Tex. May 31, 2018). Consistent with *Vargas*, the *Tavares* court found a § 1983 claim brought by a federal pretrial detainee housed in a facility operated by a private corporation should be dismissed, and further, that any *Bivens* claim against such actors was precluded. *Id.* In *Tavares*, the Western District of Texas after dismissing the plaintiff's § 1983 claim, opined as to any *Bivens* claim:

> In *Ziglar v. Abbassi*, the Supreme Court recognized only three valid *Bivens* cases. 137 S. Ct. 1843, 1854-55. First, in *Bivens* itself, the Supreme Court recognized an implied damage action to compensate persons injured by federal officers in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id*. at 1854 (citing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397 (1971)). Second, in *Davis v. Passman*, the Supreme Court recognized a *Bivens* remedy for a Fifth Amendment gender-discrimination case. 442 U.S. 228 (1979). Finally, in *Carlson v. Green*, the Supreme Court recognized a *Bivens* remedy for an Eight[h] Amendment Cruel and Unusual Punishment Clause case. 446 U.S. 14 (1980). Outside of these three unique circumstances, the Supreme Court views new *Bivens* claims with disfavor. *Abbassi*, 137 S.Ct. at 1857. For over 30 years the Supreme Court has consistently refused to extend *Bivens* into new context. *Id*. (citing *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).
>
> ***
>
> New Bivens claims are unavailable "if there are special factors counselling hesitation in the absence of affirmative action by Congress" or if there are alternative, existing processes for relief. *Abbasi*, 137 S.Ct. at 1857. In this case, without deciding if there are any special factors involved, Tavares has an alternative remedy under Texas tort law. Specifically, Texas law imposes general tort duties on private prisons. *See Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (citing

REPORT AND RECOMMENDATION – Page 19

> *Salazar v. Collins*, 255 S.W.3d 191, 198-200 (Tex. App.—Waco 2008, no pet.)).
> Therefore, Tavares cannot bring a Bivens action against the Defendants.

*Tavares*, 2018 WL 2452977, at *3.

Furthermore, in *Martinez v. Foster*, Magistrate Judge Kimberly C. Priest-Johnson of the Eastern District of Texas considered similar claims as those asserted by Plaintiff against the entity who managed the FCDC prior to the instant Corporate Defendants. No. 4:13CV59, 2017 WL 9286990, at *5 (E.D. Tex. Mar. 13, 2017), *report and recommendation adopted*, No. 4:13CV59, 2017 WL 1251105 (E.D. Tex. Mar. 31, 2017). There, Judge Johnson declined to dismiss Plaintiff's § 1983 claims on the basis that the pleadings did not definitively establish that the plaintiff was arrested on federal charges. *Id.* at *6. Judge Johnson reasoned that the FCDC houses both state and federal pre-trial detainees and it was unclear whether the plaintiff was on a USMS hold:

> Plaintiffs' allegations do not eliminate the possibility that Garcia was booked into the Fannin County Jail on some state criminal charge in addition to the federal charge. Under such circumstances, CEC's detention of Garcia would have been under color of state law, as well as federal law, and CEC would be a state actor subject to suit under § 1983.

*Id.; see also Palacios v. United States Marshals Serv.*, No. MO:11-CV-009, 2012 WL 12957071, at *6-7 (W.D. Tex. Jan. 27, 2012) (finding no § 1983 claim asserted by federal detainee prisoner against the Community Education Center, a private corporation operating the Ector County Correctional Center), *report and recommendation adopted as modified sub nom. Palacios v. United States Marshal Serv.*, No. MO: 11-CV-00009-RAJ, 2012 WL 12957204 (W.D. Tex. Feb. 23, 2012); *Morgan v. Patterson*, No. 2:17-CV-160, 2017 WL 7732439, at *5 (S.D. Tex. Aug. 8, 2017) (finding § 1983 claims must be dismissed where no allegations made to indicate the state had any regular involvement in the day to day operations of the detention center which was operated by private company), *report and recommendation adopted*, No. 2:17-CV-00160, 2018

WL 942458 (S.D. Tex. Feb. 15, 2018), *aff'd*, 772 F. App'x 117 (5th Cir. 2019); *Nyabwa v. Corr. Corp. of Am.*, No. CV H-16-3792, 2017 WL 713568, at *2 (S.D. Tex. Feb. 22, 2017) ("As a private corporation operating a prison under contract with the <u>federal</u> government, CCA was not acting under color of <u>state</u> law for purposes of liability under § 1983.") (emphasis in original).[14]

Unlike *Martinez*, no party disputes here that Plaintiff is a federal pre-trial detainee held on federal charges at FCDC.  No party disputes that FCDC houses federal prisoners under contract with the USMS, and that Plaintiff is one of those prisoners.  Plaintiff therefore cannot assert a claim under § 1983 against the Corporate Defendants.

The Court similarly finds any potential *Bivens* claim against the Corporate Defendants is barred.  *Tavares*, 2018 WL 2452977, at *3; *Malesko*, 534 U.S. at 61.  As referenced in *Tavares* discussed *supra*, in *Correctional Services Corp. v. Malesko*, the Supreme Court held that a federal prisoner cannot seek damages against a privately operated prison for alleged constitutional deprivations while acting under color of federal law.  534 U.S. at 71.  The Court specifically set

---

[14] Other courts outside of the Fifth Circuit have reached the same conclusion that claims such as Plaintiffs arise under *Bivens*.  *See El-Hanafi v. United States*, 40 F. Supp. 3d 358, 363 (S.D.N.Y. 2014) ("As in *Malesko*, El–Hanafi accuses a private company of the negligent provision of medical care.  Thus, the Court sees no reason why the principle articulated in *Malesko*—that. . . *Bivens* claims are precluded against private companies—should not apply here, and indeed, El–Hanafi does not dispute this in his opposition brief.  Accordingly, El–Hanafi's *Bivens* claim against Conmed and CCS is dismissed."); *Huntley v. Preston*, No. 17-2044-JDT-CGC, 2019 WL 3503993, at *2 (W.D. Tenn. Aug. 1, 2019) (finding plaintiff, a federal pretrial detainee failed to state a claim under § 1983, and further, that "a *Bivens* action may not be brought against private corporations that operate prison facilities housing federal detainees and convicted prisoners"); *Sliwinski v. Maysent*, No. 3:18-CV-2653-CAB-RBB, 2019 WL 2124667, at *3 (S.D. Cal. May 15, 2019) (dismissing federal pretrial detainee plaintiff's § 1983 claims against the corporation who ran the facility where plaintiff was housed, and further finding plaintiff cannot assert a *Bivens* claim against such defendants); *Sarro v. Cornell Corr., Inc.*, 248 F. Supp. 2d 52, 64 (D.R.I. 2003) ("In this case, Sarro is unable to show that any of the defendants were acting under color of state law for the simple reason that maintaining custody of federal prisoners is neither a power 'possessed by virtue of state law' nor one that has been 'traditionally exclusively reserved to the state.'  The authority to maintain custody of federal prisoners is one created by federal law and reserved solely to the federal government.").  However, some courts have found to the contrary. *See Ramirez Gonzalez v. Cmty. Educ. Ctrs., Inc.*, No. 2:13-CV-066-AM-CW, 2014 WL 12878554, at *4 (W.D. Tex. Apr. 30, 2014) (finding "a private employee acting under color of state law is subject to § 1983 liability"); *Belbachir v. Cnty. of McHenry*, 726 F.3d 975, 978 (7th Cir. 2013) (finding federal pretrial detainee could assert claim under § 1983 because "the contract did not federalize McHenry County Jail, which continued to house nonfederal as well as federal prisoners"); *Grady v. Aragona*, No. 20-CV-01206-JPG, 2020 WL 7123146, at *2 (S.D. Ill. Dec. 4, 2020) ("Both defendants appear to be state or local actors, and Plaintiff points to no contract between the federal government and local jail that transforms the defendants into federal agents.  Therefore, the case will be analyzed under Section 1983 at this stage.").

out "there is no implied right of action, pursuant to *Bivens*, for damages against private entities, such as operators of private prison facilities, that engage in alleged constitutional deprivations under color of federal law." *Id.* at 66. While decided under a different constitutional amendment in reaching this conclusion, the Court noted the availability of effective and often superior tort remedies, such as negligence claims, against private entities. *Id.* Here too, Plaintiff has an alternative remedy under Texas tort law; Texas law imposes general tort duties on private prisons. *See also, Forrester v. Federal Bureau of Prison*s, No. EP-18-CV-00261-KC-RFC, 2019 WL 2501924 (W.D. Tex. June 17, 2019) (finding the Supreme Court has never recognized a *Bivens* claim under the Fourteenth Amendment).

Because Plaintiff does not have a *Bivens* remedy against a private corporation, his claims against the Corporate Defendants must be dismissed. *See Moghtader v. GEO Grp., Inc.*, No. SA-18-CV-632-XR, 2020 WL 1557770, at *7 (W.D. Tex. Mar. 31, 2020) ("Plaintiff alleges that GEO is a private corporation under contract to confine federal prisoners, and Plaintiff was a federal detainee at all relevant times. Therefore, *Malesko* controls, and Plaintiff has no *Bivens* claim against GEO arising from events at CTDF."); *Roe*, 2019 WL 5031357, at *12 ("[T]he Supreme Court has expanded the *Bivens* remedy to neither claims against private corporations, *see*[] *Malesko*, 534 U.S.[at] 61. . . nor claims against employees of a private prison."). The Court finds Plaintiff, a federal pretrial detainee, housed in a facility operated by a private corporation under contract to house federal prisoners, cannot assert a claim under § 1983 against the Corporate Defendants. *Morgan*, 2017 WL 7732439, at *5.

### *Minneci* Bars Plaintiff's § 1983 Claims Against Warden King

Defendants also argue that the Supreme Court's decision in *Minneci* bars Plaintiff's claims against Warden King [Dkt. 40 at 32-33]. While *Malesko* foreclosed a *Bivens* action against a

private corporation, it left open the question of whether a *Bivens* action could lie against employees of such corporations. *See Malesko*, 534 U.S. at 61. In *Minneci*, the Supreme Court held that *Bivens* claims are not allowed against private actors, even when they were acting under color of federal authority. *See Lampley v. Doe*, No. 1:21CV261, 2021 WL 3396777, at *2 (E.D. Tex. June 3, 2021) (citing *Minneci v. Pollard*, 565 U.S. 118, 131 (2012)), *report and recommendation adopted sub nom. Lampley v. Doe*, No. 1:21-CV-261, 2021 WL 3367677 (E.D. Tex. Aug. 2, 2021). More specifically, in *Minneci*, a federal prisoner confined at a private prison sought to assert an Eighth Amendment claim of deliberate indifference to his serious medical needs against individual employees of the prison. *Id.* at 125. The Court held that where a federal prisoner seeks damages from an individual employed at a privately operated federal prison for alleged conduct that falls within the scope of traditional state tort law, the prisoner must seek a remedy under state law. *Id.* at 123-31. Following *Malesko* and *Minneci,* private corporations and their employees generally cannot be held liable under *Bivens. Woodard v. United States*, No. 1:17CV174, 2018 WL 4517624, at *8 (E.D. Tex. Aug. 31, 2018) (citing *Minneci*, 565 U.S. at 130-31), *report and recommendation adopted*, No. 1:17-CV-174, 2018 WL 4517495 (E.D. Tex. Sept. 19, 2018).

Plaintiff alleges that Warden King, who upon information and belief is employed by the Corporate Defendants, who in turn are private contractors, violated his constitutional rights to proper medical care while acting under color of federal law [Dkt. 28 at 17-18]. Defendants confirm that Warden King is a private employee [Dkt. 40 at 32-33]. Courts in the Fifth Circuit have previously held that Texas state tort law provides an adequate alternative remedy, and, as in those cases, Plaintiff cannot assert a claim against Warden King under *Bivens* for allegedly inadequate medical care under the Fourteenth Amendment. *See Ayala-Gutierrez*, 2016 WL 524225, at *2 ("Plaintiff's claims against the defendants complain of types of conduct that typically fall within

REPORT AND RECOMMENDATION – Page 23

the scope of traditional state tort law, such as negligence.  Therefore, to the extent plaintiff seeks damages from GEO and its employees, he fails to state a federal claim upon which relief may be granted."); *see e.g., Cervantes v. Dixon*, No. 5:13-CV-205-C ECF, 2014 WL 5285699, at *2 (N.D. Tex. Oct. 15, 2014) ("As the plaintiff in *Minneci*, Cervantes alleges that employees of a privately-operated federal prison denied him adequate medical care and, as in *Minneci*, state tort law provides an adequate alternative remedy for Cervantes' damages claim."); *Aguilar-Hernandez*, 2020 WL 5583532, at *4 (finding plaintiff's claim for violation of the Eighth Amendment through the provision of inadequate medical care raises "claims challenging conduct that typically falls within the scope of traditional state tort law"); *Grant v. Lacie*, No. CIV.A. H-15-1849, 2015 WL 4769753, at *2 (S.D. Tex. Aug. 12, 2015) ("Because Texas provides an adequate alternative remedy for his claims of negligence and inadequate medical care, [plaintiff] may not pursue relief under *Bivens*.").  Because any *Bivens* claim against Warden King for violation of Plaintiff's rights under the Eighth and Fourteenth Amendments is barred, such claims should be dismissed.[15]  *See Rodriguez-Cortez v. Dalby C.F.*, No. 5:14-CV-012-BG, 2014 WL 11514797, at *2 (N.D. Tex. Oct. 28, 2014) ("*Bivens* does not authorize an action for damages against the Dalby Facility Defendant-employees based on inadequate medical care."); *Ali v. Immigr. & Customs Enf't*, No. 1:16-CV-037-BL, 2017 WL 4325785, at *3 (N.D. Tex. Aug. 29, 2017) ("Because defendants Villegas, Ashley, and Hernandez are employees of Emerald Corrections Management, a private corporation, no *Bivens* action is available against these employees of a private corporation if Texas provides an adequate remedy for these claims."), *report and recommendation adopted*, No. 1:16-CV-037-C, 2017 WL 4296756 (N.D. Tex. Sept. 26, 2017).

---

[15] *Minneci* also bars Plaintiff's claims for alleged constitutional violations against the John and Jane Doe Defendants to the extent they too are alleged to be employees of the Corporate Defendants.

REPORT AND RECOMMENDATION – Page 24

In addition, Plaintiff's claims against Warden King should also be dismissed because vicarious liability is inapplicable to *Bivens* and § 1983 suits; a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution. *Iqbal*, 556 U.S. at 663 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, the plaintiff in a suit such as the present one must plead that each Government-official defendant, through his own individual actions, has violated the Constitution.") (citing *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *Shaw v. Villanueva*, 918 F.3d 414, 417 (5th Cir. 2019) ("vicarious liability doesn't apply to *Bivens* and § 1983 suits"). Here, Defendants argue, and the Court agrees, that Plaintiff has failed to allege personal liability on the part of Warden King [Dkt. 40 at 28-29]. Plaintiff argues against this result, directing the Court to demand letters attached to the Amended Complaint which Plaintiff contends put Warden King on notice [Dkts. 28-19; 28-20; 47 at 22]. However, in reviewing such demand letters, the Court notes that the letters were not directed to Warden King but were instead sent to a "Warden Joseph Wilson" [Dkts. 28-19 at 2; 28-20 at 2]. Such demand letters do not support Plaintiff's argument that he has alleged personal liability on the part of Warden King. Because Plaintiff has failed to include any allegations of personal involvement on the part of Warden King, the Court finds for this alternative reason Plaintiff's claims against Warden King should be dismissed.

The Court therefore finds that all of Plaintiff's claims against the Corporate Defendants and Warden King under § 1983 should be dismissed. The only remaining claims against the Corporate Defendants and Warden King are Plaintiff's state law claims for negligence and gross negligence, which the court will address *infra*.

REPORT AND RECOMMENDATION – Page 25

**Negligence – Corporate Defendants and Warden King**

Plaintiff pleads a claim for negligence against the Corporate Defendants and the Individual Defendants (and thus not Fannin County) [Dkt. 28 at 19]. Defendants argue that Plaintiff has failed to properly state a claim for negligence [Dkt. 40 at 33]. Specifically, Defendants urge Plaintiff has not established that any defendant other than the USMS owed Plaintiff a duty, and further that Plaintiff has failed to establish a breach [Dkt. 40 at 33]. Defendants also cite pleading issues; namely, that Plaintiff's global or collective allegations against all Defendants impermissibly blurs his claims [Dkt. 40 at 14-15, 33 (citing Dkt. 28 at 19 ¶¶45, 48, 51)]. Plaintiff does not respond directly to these points, other than to again urge the Court not to consider the totality of Plaintiff's medical records at this stage and to state Defendants have grossly mischaracterized Plaintiff's pleading as global [Dkt. 47 at 19].

Common law negligence consists of three essential elements: (1) a legal duty owed to the plaintiff by defendant; (2) a breach of that duty; (3) damages proximately resulting from the breach. *Stephens v. Corr. Servs. Corp.*, 428 F. Supp. 2d 580, 584 (E.D. Tex. 2006) (citing *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998)). Plaintiff's live pleading impermissibly lumps Defendants together without any allegations of individualized conduct. The Court is unable to discern the specific duties owed, and conduct alleged to have breached those duties, as to each Defendant. Plaintiff cannot hide behind group pleading. *See Guerrero v. Taylor Cnty., Tex.*, No. 1:17-CV-050-C-BL, 2018 WL 1033261, at *5 (N.D. Tex. Feb. 23, 2018) (dismissing plaintiff's claims for negligence because the allegations impermissibly lump all defendants together without specifying what acts or omissions were taken by defendants). However, Plaintiff should be provided an opportunity to amend his negligence claim to correct this pleading deficiency. Upon repleading, Plaintiff should avoid lumping the defendants together and should instead separately

allege the scope of any duties owed and conduct alleged to have breached those duties as to each defendant. *See Ware v. U.S. Bank Nat'l Ass'n*, No. 3:13cv387-DPJ-FKB, 2013 WL 6805153, at *4 (S.D. Miss. Dec. 20, 2013); *see also Lemann v. Midwest Recovery Fund, LLC*, No. CV 15-3329, 2016 WL 6092539, at *3-4 (E.D. La. Oct. 19, 2016) ("it is not enough to simply rest on the use of the collective term, 'Defendants,' in the allegations") (quoting *Lemann v. Midwest Recovery Fund, LLC*, CV 15-3329, 2015 WL 7306442, at *5 (E.D. La. Nov. 19, 2015) (citing *Rush v. Savchuk*, 444 U.S. 320, 332-22 (1980) (holding that aggregating the defendant into a collective of "defending parties" did not satisfy federal due process))).

### Gross Negligence Claims

Defendants similarly aver that Plaintiff has failed to state a claim for gross negligence [Dkt. 40 at 14-15, 33-34 (citing Dkt. 28 at 19 ¶¶45, 48, 51)]. Gross negligence is defined as an act or omission:

> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

TEX. CIV. PRAC. & REM. CODE § 41.001(11). Gross negligence is not a separate cause of action from negligence, but rather, it is a measure of the degree of negligence and is relevant to the recovery of exemplary damages. *Ruelas v. W. Truck & Trailer Maint. Inc.*, No. PE:18-CV-2-DC, 2019 WL 4060891, at *7 (W.D. Tex. June 6, 2019) (citing *Prati v. New Prime, Inc.*, 949 S.W.2d 552, 557 (Tex. App.—Amarillo, 1997, pet. denied); *RLI Ins. Co. v. Union Pac. R.R. Co.*, 463 F. Supp. 2d 646, 650 (S.D. Tex. 2006)). The primary difference between gross and ordinary negligence is the mental state of the defendant—conscious indifference—which justifies the

imposition of exemplary damages for gross negligence. *James v. Dasilva Transp., Inc.*, No. 4:19-CV-592, 2021 WL 863772, at *4 (S.D. Tex. Feb. 5, 2021) (citing *Williams v. McCollister*, 671 F. Supp. 2d 884, 889 (S.D. Tex. 2009)), *report and recommendation adopted sub nom. James v. DaSilva Transp. Inc*, No. 4:19-CV-00592, 2021 WL 861450 (S.D. Tex. Mar. 8, 2021). "Under the objective component, 'extreme risk' is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). The subjective prong of gross negligence "requires that the defendant knew about the risk, but the defendant's acts or omissions demonstrated indifference to the consequences of its acts." *Id.* To be clear, evidence of ordinary negligence is not enough to establish either the objective or subjective elements of gross negligence. *Ruelas*, 2019 WL 4060891, at *7 (citing *U-Haul Int'l*, 380 S.W.3d at 137 (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998))). Here too, Defendant argues "a pleading issue needs to be addressed" [Dkt. 40 at 33]. The Court agrees; it cannot assess global allegations of fault. For the same reasons as set forth in connection with Plaintiff's negligence claim, the Court finds Plaintiff has failed to properly plead a claim for gross negligence; Plaintiff impermissibly lumps all Defendants together but should be permitted an opportunity to replead.

***Municipal Liability Claims – Fannin County Policy***

Defendants globally assert that the Court should dismiss all Fourteenth Amendment claims against all Defendants on the basis that the Fourteenth Amendment is inapplicable, and Plaintiff's claims arise under *Bivens* [Dkt. 40 at 16]. Defendants make no specific argument on this front as to Fannin County (nor cite to any authority), focusing their arguments for dismissal on Plaintiff's alleged failures in pleading municipal liability against Fannin County [Dkt. 40 at 17-26].

REPORT AND RECOMMENDATION – Page 28

Defendants argue that even if Plaintiff could pursue a claim against Fannin County under § 1983, Plaintiff has failed to state a viable municipal liability claim because: (1) no plausible facts show the requisite policy; (2) no plausible facts show a requisite custom; (3) no plausible facts show that the constitutional policies were maintained with deliberate indifference; and (4) no plausible facts show that an official policy was the "moving force" behind Plaintiff's alleged injuries [Dkt. 40 at 17-24]. Defendant repeatedly urge that Plaintiff has failed to identify a specific policy or custom allegation against the County [Dkt. 40 at 17]. Plaintiff counters that he "has alleged the widespread practice of LaSalle in following its custom and practice of denial of needed medical care, and the acceptance of LaSalle's method of operation by the Fannin County Defendants" [Dkt. 47 at 15]. Specifically, Plaintiff avers he has alleged:

> how the LaSalle entities are operating together under the rubric of "LaSalle Corrections," how they have adopted a policy and custom of refusing needed medical care for inmates, and how Fannin County, the Warden, and the County Sheriff, have been made aware of [Plaintiff's] needs, and have done nothing to help him.

[Dkt. 47 at 16].

Municipalities, including counties, may be held liable under § 1983. *Gage v. Valdez*, No. 3:16-CV-1360-B-BH, 2017 WL 4465765, at *3 (N.D. Tex. Aug. 21, 2017) (citing *Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 224 (5th Cir. 2008)), *report and recommendation adopted*, No. 3:16-CV-1360-B-BH, 2017 WL 4419041 (N.D. Tex. Oct. 4, 2017). However, county liability generally requires that "(1) an official policy (2) promulgated by the [county] policymaker (3) was the moving force behind the violation of a constitutional right." *Daves v. Dall. Cnty., Tex.*, 984 F.3d 381, 401 (5th Cir. 2020) (citing *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). Fannin County's policy may be shown in two ways: (1) a "policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the

REPORT AND RECOMMENDATION – Page 29

[County's] final lawmaking officers;" or (2) a "persistent, widespread practice of the [County's] officials or employees, although not authorized by officially adopted and promulgated policy, is so common and well settled so as to constitute a custom that fairly represents the [County's] policy." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002); *Groden v. City of Dall.*, 826 F.3d 280, 282 (5th Cir. 2016). Moreover, "*[r]espondeat superior* does not apply to municipalities for claims under § 1983." *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). To be clear, a governmental entity, such as Fannin County, cannot be held vicariously liable for the conduct of its employees under § 1983. *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Monell*, 436 U.S. at 691; *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). Instead, liability may be imposed "only where [the government entity] *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 694-95) (emphasis in original).

In the instant case, Plaintiff's factual background makes no mention of any Fannin County policy. Rather, any assertion of a policy is either made solely in connection with the Corporate Defendants, or as to the Corporate Defendants with a contention by Plaintiff that Fannin County has allegedly adopted or acquiesced in such policy [Dkt. 28]. Specifically, in his complaint, Plaintiff states:

> [F]ailure and refusal to provide critically needed medical care is standard operating procedure, and actually amounts to a well established policy, custom, and practice for detention facilities being operated by Defendants Southwest Correctional, LLC d/b/a LaSalle Corrections, LLC, [] d/b/a LaSalle Southwest Corrections, LaSalle Management Company, LLC, as will be detailed below, a practice and custom that has been adopted by Fannin County, Stacey King, and Mark Johnson by acquiescing in LaSalle's practices.

[Dkt. 28 at 2]. Plaintiff continues on, detailing the alleged custom or policy:

> LaSalle Corrections was fully aware, and had actual knowledge, of [Plaintiff's] condition, and his urgent need for surgery, yet has failed and refused to provide

REPORT AND RECOMMENDATION – Page 30

such badly needed treatment. On information and belief, Defendant Stacey King, the Warden in charge of overall oversight and management of the detention facility, and Mark Johnson, as the sheriff of Fannin County with overall responsibility for housing pretrial detainees, who were policy makers for Fannin County, were aware of [Plaintiff's] ongoing pain and need for surgery, yet they failed and refused to provide such treatment, even though the expense for such procedure would be reimbursed by the Federal Government. . . On information and belief, such wilful [sic] denial of medical care is the result of the established custom, policy, pattern, and practice of LaSalle Corrections, adopted and acquiesced in by the Fannin County defendants, demonstrating their direct, intense, and systemic disregard for the lives and comfort of the inmates who have been entrusted to them, believing that they are justified in denying medical care because these individuals are merely detainees and prisoners, whom Defendants believe do not deserve to be treated like human beings.

***

The obvious, wilful [sic], failure and refusal of LaSalle Corrections, King, Johnson, and Garrison, to provide the necessary medical care for [Plaintiff] was due to the long established policy, practice, customs, and procedures of LaSalle to provide as little medical care as possible, and as cheaply as possible, and thus constituted conscious and deliberate indifference to [Plaintiff's] urgent need for medical care. Further, the failure of Marshal Garrison to approve medical treatment for [Plaintiff], if it occurred, was a further example of the custom, pattern, and practice of denial of needed medical care in order to save money.

***

Because of the custom and practice, and established policy, of deliberate indifference to the suffering and medical needs of inmates, and the practice of understaffing the medical staff, and use of untrained or poorly trained medical care employees and jail personnel, and because of Defendants' actions, deliberate indifference, and purposeful inactions, which were an established custom and practice of Defendants, all of which are prevalent at facilities operated by LaSalle, which custom and practice were adopted and acquiesced in by the Fannin County Defendants, and which were aided and abetted by the United States Marshal and are being continued by the Bureau of Prisons, [Plaintiff] has suffered intense, ongoing, severe pain and suffering, for which he is entitled to recovery of his damages of and from Defendants.

Defendants LaSalle Management and LaSalle Corrections have adopted a policy, custom, practice, and have engaged in an ongoing course of conduct, involving conscious indifference to the medical needs of inmates so that such conduct has become their policy or custom, designed to prevent prisoners from receiving appropriate, constitutionally-mandated medical attention, solely to avoid the "unnecessary" expenses associated therewith. On information and belief, LaSalle's primary motivation in undertaking and implementing this policy is to maximize profits by limiting expenses for medical care and maintaining as little staff as possible. Such actions result in an unsafe and unfit jail environment and, as a matter of course, result in loss of life and unconstitutional pain and suffering.

***

The policies and procedures of LaSalle, as carried out by the individual Defendants, as also detailed above, constitute deliberate indifference and are otherwise unconstitutional.  LaSalle has implemented and effectuated policies and customs that prevent inmates in its care from receiving appropriate medical care or treatment, and is purposely concealing medical records to conceal its wrongdoing. These policies and customs prevent inmates suffering from ongoing conditions and those suffering from emergent health threats from receiving necessary health care. These policies, and the training or lack of training behind the same, also represent deliberate and conscious indifference of the Defendants, as the policies are designed to maximize profits and limit costs, but which proximately resulted in the callous and barbaric lack of treatment for Plaintiff.

[Dkt. 28 at 4, 12, 14-16].

Plaintiff has failed to allege an official policy or custom specific to Fannin County.  *See Jenkins v. LaSalle Sw. Corr.*, No. 3:17-CV-1376-M-BN, 2020 WL 2106355, at *3 (N.D. Tex. Jan. 28, 2020) ("Plaintiff fails to allege that his rights were violated under an official policy of either LaSalle or Johnson County, he has not alleged a plausible claim against the defendants or their policymakers."), *report and recommendation adopted*, No. 3:17-CV-1376-M, 2020 WL 2105842 (N.D. Tex. Apr. 30, 2020).  Moreover, in connection with assertion of the claim itself, Plaintiff has inappropriately grouped all Defendants together, "and thus it is unclear who did or should have had knowledge of staff behavior and whether any policymaker might have ratified the policy."  *McElvy v. Southewestern Corr., LLC*, No. 3:19-CV-1264-N, 2020 WL 5235741, at *3 (N.D. Tex. Sept. 1, 2020).  The precise identity of a policymaker is a question of law, but a plaintiff must still allege that "'[a]ctual or constructive knowledge' is attributed to a ... policymaker."  *Id.* (citing *Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018)); *see also Jenkins*, 2020 WL 2106355, at *3 (finding plaintiff failed to state a claim for municipal liability where plaintiff was requested to clarify his claims against defendants and informed that "[t]o establish the liability of a municipal entity, you must prove that action under official municipal policy caused your injury.  Please state what official policy or custom you allege, if any, harmed you" and plaintiff

stated only "that he was harmed when he 'tried to seek medical attention,' leading 'to multiple evaluations, without any care administered.'").  The Court notes that Plaintiff's counsel has already once been admonished by other Courts when asserting very similar claims that impermissibly lumping all defendants together in assertions of municipal liability is insufficient.  *Id.*; *McElvy*, 2020 WL 5235741, at *3.  Therefore, because the Court is unable to discern any policy by Fannin County or alternatively which "policies or customs" are specific to, and promulgated by, Fannin County due to the "lumped" pleadings against all Defendants, the Court finds that Plaintiff has failed to plead a claim for municipal liability against Fannin County, but should be allowed an opportunity to amend his complaint as it relates to his municipal liability claims against Fannin County.[16] [17]

---

[16] The Court further recommends, that should the District Court find dismissal of the Corporate Defendants and Warden King improper under the *Malesko* or *Minneci* analysis, Plaintiff's pleadings against such Defendants for any assertion of municipal liability fail for similar reasons.

[17] Plaintiff alleges a claim under the Fourteenth Amendment challenging the conditions of confinement at the FCDC [Dkt. 28 at 17].  A pretrial detainee's claim of unconstitutional conditions is governed by the Fourteenth Amendment. *Johnson v. City of Shreveport*, No. 17-0900, 2018 WL 3824380, at *5 (W.D. La. Aug. 10, 2018) (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2nd Cir. 2017)).  In the Fifth Circuit, pretrial detainee Fourteenth Amendment claims may be analyzed two different ways, depending on the allegations—as a challenge to the conditions of confinement or as an episodic acts or omissions claim.  *See Fuentes v. Gomez*, No. 2:16-CV-390, 2018 WL 322161, at *5 (S.D. Tex. Jan. 8, 2018) (citation omitted).  This distinction was developed by the court in *Hare v. City of Corinth, Miss.*, 74 F.3d 633 (5th Cir. 1996) (en banc).  *See Nerren v. Livingston Police Dept.,* 86 F.3d 469, 473 n. 25 (5th Cir.1996) (describing *Hare* as "a single opinion that clearly and concisely articulates and unifies our court's case law in this area").  A conditions of confinement case is a constitutional attack on "general conditions, practices, rules, or restrictions of pretrial confinement." *Hare*, 74 F.3d at 644.  In a case challenging conditions of confinement, "the proper inquiry is whether those conditions amount to punishment of the detainee." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).  "Although failure-to-provide-medical-care claims are generally brought as episodic-acts-or-omissions claims, a plaintiff may assert a conditions-of-confinement claim based on injuries suffered as a result of not receiving proper medical attention if the plaintiff does not implicate the acts or omissions of individuals but rather the jail's system of providing medical care to inmates." *Dotson v. Bexar Cnty. Hosp. Dist.*, No. SA-19-CV-00083-XR, 2019 WL 6311375, at *4 (W.D. Tex. Nov. 25, 2019) (citing *Reed v. Wichita Cnty. (Estate of Henson)*, 795 F.3d 456, 463 (5th Cir. 2015)).  The Court notes that Plaintiff does not make a single reference to "episodic act or omission" in the live pleading.  Plaintiff's assertion that his Fourteenth Amendment claim is a conditions of confinement is important as "[t]he distinction between the two[, condition of confinement and episodic acts or omissions,] is significant because the standard of review that this court – and the jury – must utilize when applying the facts to the law in this case is different. *Williams v. City of Yazoo, Miss.*, No. 3:15-CV-103-HTW-LRA, 2020 WL 6122357, at *12 (S.D. Miss. Oct. 17, 2020).  Plaintiff seemingly intends to plead only a conditions of confinement claim [Dkt. 28 at 17].

REPORT AND RECOMMENDATION – Page 33

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned recommends that Southwestern Correctional, LLC, d/b/a LaSalle Corrections, LLC, d/b/a LaSalle Southwest Corrections; LaSalle Management Company, LLC; Warden Stacey King; Sheriff Mark Johnson; and Fannin County, Texas's Motion to Dismiss First Amended Complaint [Dkt. 40] be **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claims against Sheriff Mark Johnson have been voluntarily dismissed. Plaintiff's claims for violation of his Eighth Amendment rights and any claim for violation of his constitutional rights stemming from a failure to train should be **DISMISSED**, Plaintiff's § 1983 claims against the Corporate Defendants and Warden Stacey King, and the unserved John and Jane Does should be **DISMISSED**, as stated herein.  As to Plaintiff's negligence and gross negligence claims, Plaintiff should be permitted an opportunity to file an amended complaint to correct his pleading deficiencies; should the District Judge adopt this recommendation, Plaintiff should be given fourteen (14) days from any such adoption to amend his complaint.  The Court additionally recommends that Plaintiff be permitted to replead his claims for municipal liability against Fannin County under the Fourteenth Amendment.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 17th day of August, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE